1   ERIC J. HAMILTON (CA 296283)
    ZACHARY B. POHLMAN*
2   Nebraska Department of Justice
    2115 State Capitol
3   Lincoln, Nebraska 68509
    Tel.: (402) 471-2683
4   Fax: (402) 471-3297
    *Pro hac vice application granted
5
    Counsel for Plaintiff State of Nebraska
6
    Additional counsel listed in signature block
7

8                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF CALIFORNIA
9                        SACRAMENTO DIVISION

10

11
    **STATE OF NEBRASKA, et al.,**          Case No.: 2:24-cv-01364-TLN-CKD
12
                            Plaintiffs,     **PLAINTIFFS' OPPOSITION TO**
13                                          **DEFENDANTS' MOTION TO DISMISS**

            v.
14                                          Judge:       Hon. Troy Nunley
                                            Date:        October 31, 2024
15  **STEVEN S. CLIFF, in his official capacity**   Time:        2:00 PM
    **as the Executive Officer of the California**  Courtroom:   2, 15th Floor
16  **Air Resources Board; and ROB BONTA, in**      Action Filed: May 13, 2024
    **his official capacity as the Attorney General**  Trial Date:  Not set
17  **of the State of California,**

18                          Defendants.

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF CONTENTS

2

Page

3    Table of Authorities ........................................................................................................ iii

4    Introduction ...................................................................................................................... 1

5    Legal Standard ................................................................................................................. 1

6    Argument .......................................................................................................................... 2

7    I.    All Plaintiffs Have Standing. ............................................................................. 2

8          A.    State Plaintiffs Have Standing. ................................................................. 2

9                1.    The Complaint alleges, and Defendants do not disagree, that
                       Advanced Clean Fleets will increase the number of
10                     battery-electric trucks in Plaintiffs' States. ................................... 2

11               2.    State Plaintiffs have plausibly alleged *parens patriae* standing. ..... 5

12               3.    State Plaintiffs' other standing theories meet the plausibility
                       standard. ........................................................................................ 7
13
          B.    The Arizona State Legislature Has Standing. ............................................. 9
14
          C.    The Nebraska Trucking Association Has Standing. ................................... 9
15
     II.   The 2036 Sales Requirement Is Ripe for Review. ............................................. 10
16
     III.  The Complaint States a Clean Air Act Preemption Claim. ................................ 12
17
     IV.   The Complaint States an FAAAA Claim. ......................................................... 14
18
          A.    The FAAAA and Clean Air Act § 209(b) peaceably coexist. .................... 14
19
          B.    Plaintiffs plausibly allege an FAAAA claim. ........................................... 16
20
     V.    The Complaint States a Dormant Commerce Clause Claim. .............................. 18
21
     VI.   The Attorney General Is Not Immune from Two Plaintiffs' Claims. ................... 20
22
     Conclusion ....................................................................................................................... 20
23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

Page(s)

**Cases**

3

4

*Alfred L. Snapp & Son, Inc. v. Puerto Rico,*
   458 U.S. 592 (1982) ........................................................................................... 5, 6, 7

5

*Aluminum Co. of Am. v. Bonneville Power Admin.,*
   903 F.2d 585 (9th Cir. 1989) ...................................................................................... 8

6

7

*Arizona State Legislature v. Arizona Independent Redistricting Comm'n,*
   576 U.S. 787 (2015) ..................................................................................................... 9

8

9

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ................................................................................................. 1, 2

10

*Ashe v. Swenson,*
   397 U.S. 436 (1970) ................................................................................................... 14

11

12

*Assoc. des Eleveurs v. Harris,*
   729 F.3d 937 (9th Cir. 2013) .................................................................................... 20

13

*ATA v. City of Los Angeles,*
   660 F.3d 384 (9th Cir.2011) ...................................................................................... 17

14

15

*Barnum Timber Co. v. EPA,*
   633 F.3d 894 (9th Cir. 2011) ...................................................................................... 3

16

17

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ................................................................................................. 1, 7

18

*Bennett v. Spear,*
   520 U.S. 154 (1997) ................................................................................................. 2, 7

19

20

*Bibb v. Navajo Freight Lines, Inc.,*
   359 U.S. 520 (1959) ................................................................................................... 19

21

22

*Biden v. Nebraska,*
   143 S. Ct. 2355 (2023) ................................................................................................. 2

23

*Bolln v. Nebraska,*
   176 U.S. 83 (1900) ..................................................................................................... 14

24

25

*Cal. Dump Truck Owners Ass'n v. Nichols,*
   No. 2:11-CV-00384, 2012 WL 273162 (E.D. Cal. Jan. 30, 2012) ......................... 17

26

27

*California Trucking Ass'n v. Bonta,*
   996 F.3d 644 (9th Cir. 2021) .................................................................................... 17

28

**Cases—continued**

*Case v. Toftus,*
    39 F. 730 (C.C.D. Or. 1889) ............................................................. 14

*Chamber of Com. v. EPA,*
    642 F.3d 192 (D.C. Cir. 2011) ............................................................. 4

*Church of Scientology of Cal. v. United States,*
    506 U.S. 9 (1992) ............................................................. 3

*Citizens United v. FEC,*
    558 U.S. 310 (2010) ............................................................. 16

*City of Oakland v. Lynch,*
    798 F.3d 1159 (9th Cir. 2015) ............................................................. 8

*City of Sausalito v. O'Neill,*
    386 F.3d 1186 (9th Cir. 2004) ............................................................. 8

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) ............................................................. 11

*Coal. for a Sustainable Delta v. McCamman,*
    725 F. Supp. 2d 1162 (E.D. Cal. 2010) ............................................................. 4

*Competitive Enter. Inst. v. NHTSA,*
    901 F.2d 107 (D.C. Cir. 1990) ............................................................. 9, 12

*Coyle v. Smith,*
    221 U.S. 559 (1911) ............................................................. 14

*Cruz v. Beto,*
    405 U.S. 319 (1972) ............................................................. 2, 3

*CTA v. v. S. Coast Air Quality Mgmt. Dist.,*
    CV-21-06341, WL 9622548 (C.D. Cal. Dec. 14, 2023) ............................................................. 17

*Ctr. for Auto Safety v. NHTSA.,*
    793 F.2d 1322 (D.C. Cir. 1986) ............................................................. 9

*Dilts v. Penske Logistics, LLC,*
    769 F.3d 637 (9th Cir. 2014) ............................................................. 17

*Ecological Rts. Found. v. Pac. Lumber Co.,*
    230 F.3d 1141 (9th Cir. 2000) ............................................................. 10

*Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.,*
    541 U.S. 246 (2004) ............................................................. 12

**Cases—continued**

*FDA v. All. for Hippocratic Med.*,
    602 U.S. 367 (2024) ............................................................................... 10

*Gen. Motors Corp. v. Tracy*,
    519 U.S. 278 (1997) ............................................................................... 19

*Geo Grp., Inc. v. Newsom*,
    50 F.4th 745 (9th Cir. 2022) ................................................................. 11

*Guy v. Baltimore*,
    100 U.S. 434 (1880) ............................................................................... 20

*Hunt v. Wash. State Apple Advert. Comm'n*,
    432 U.S. 333 (1977) ............................................................................... 10

*Missouri ex rel. Koster v. Harris*,
    847 F.3d 646 (9th Cir. 2017) .............................................................. 5, 6

*L.A.Haven Hospice, Inc. v. Sebelius*,
    638 F.3d 644 (9th Cir. 2011) ................................................................... 8

*Lucas v. Bechtel Corp.*,
    633 F.2d 757 (9th Cir. 1980) ................................................................... 2

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ....................................................................... 2, 7, 12

*M.S. v. Brown*,
    902 F.3d 1076 (9th Cir. 2018) ............................................................. 13

*Mohsin v. Cal. Dep't of Water Res.*,
    52 F. Supp. 3d 1006 (E.D. Cal. 2014) ................................................... 7

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992) ............................................................................... 17

*Motor & Equip. Mfrs. Ass'n, Inc. v. EPA*,
    627 F.2d 1095 (D.C. Cir. 1979) ........................................................... 19

*In re Murray Energy Corp.*,
    788 F.3d 330 (D.C. Cir. 2015) ............................................................. 14

*Murthy v. Missouri*,
    144 S. Ct. 1972 (2024) ............................................................................ 5

*N.D. v. Reykdal*,
    102 F.4th 982 (9th Cir. 2024) ................................................................. 2

**Cases—continued**

*Nat'l Council of La Raza v. Cegavske,*
    800 F.3d 1032 (9th Cir. 2015) ............................................................. 10

*Nat'l Pork Prod. Council v. Ross,*
    598 U.S. 356 (2023) ................................................................. 18, 19, 20

*Nebraska v. EPA,*
    No-24-1129 (D.C. Cir) ........................................................................ 4

*Ocean Advocs. v. U.S. Army Corps of Eng'rs,*
    402 F.3d 846 (9th Cir. 2005) ................................................................ 3

*Ohio v. EPA,*
    98 F.4th 288 (D.C. Cir. 2024) ......................................... 4, 11, 14, 16

*OSU Student All. v. Ray,*
    699 F.3d 1053 (9th Cir. 2012) ......................................................... 2, 13

*Pac. Merch. Shipping Ass'n v. Goldstene,*
    517 F.3d 1108 (9th Cir. 2008) .......................................................... 13

*Pennsylvania v. West Virginia,*
    262 U.S. 553 (1923) ........................................................................... 11

*People v. Mobil Oil Corp.,*
    143 Cal. App. 3d 261 (Ct. App. 1983) ............................................. 20

*Puente Ariz. v. Arpaio,*
    821 F.3d 1098 (9th Cir. 2016) .......................................................... 16

*Reg'l Rail Reorg. Act Cases,* 419 U.S. 102, 143 (1974)) ...................... 11

*Rowe v. N.H. Motor Transp. Ass'n,*
    552 U.S. 364 (2008) ..................................................................... 14, 17

*Russell v. Landrieu,*
    621 F.2d 1037 (9th Cir. 1980) ....................................................... 3, 18

*Shelby County v. Holder,*
    570 U.S. 529 (2013) ........................................................................... 14

*Southern Pacific Co. v. Arizona ex rel. Sullivan,*
    325 U.S. 761 (1945) ........................................................................... 19

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016) ............................................................................. 2

**Cases—continued**

*Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*,
 559 U.S. 662 (2010) ................................................................................... 11

*Summers v. Earth Island Institute*,
 555 U.S. 488 (2009) ................................................................................... 10

*Swinomish Indian Tribal Cmty. v. BNSF Ry*,
 951 F.3d 1142 (9th Cir. 2020) ................................................................... 15

*United States v. Salerno*,
 481 U.S. 739 (1987) ................................................................................... 16

*Uzuegbunam v. Preczewski*,
 141 S. Ct. 792 (2021) ................................................................................... 3

*Va. Off. for Prot. & Advocacy v. Stewart*,
 563 U.S. 247 (2011) ................................................................................... 21

*Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*,
 535 U.S. 635 (2002) ................................................................................... 20

*Virginia House of Delegates v. Bethune-Hill*,
 587 U.S. 658 (2019) ..................................................................................... 9

*W. & S. Life Ins. v. State Bd. of Equal. of Cal.*,
 451 U.S. 648 (1981) ................................................................................... 19

*Whitmore v. Arkansas*,
 495 U.S. 149 (1990) ................................................................................... 11

*World-Wide Volkswagen Corp. v. Woodson*,
 444 U.S. 286 (1980) ................................................................................... 14

*Wyoming v. Oklahoma*,
 502 U.S. 437 (1992) ..................................................................................... 8

*Ex parte Young*,
 209 U.S. 123 (1908) ............................................................................. 20, 21

**Constitution**

U.S. Const.
 amend. XI ................................................................................................... 20
 art. I, § 8, cl. 3 .................................................................................. 1, 18, 19, 20

**Statutes**

28 U.S.C. § 1331 .............................................................................................. 13

**Statutes—continued**

42 U.S.C.
    § 7543(a) ............................................................................. 13, 19
    § 7543(b) ..................................................................... 13, 14, 15, 18
    § 7607(b)(1) .............................................................................. 13

49 U.S.C. § 14501(c)(1) ................................................................. *passim*

Ariz. Rev. Stat. § 41-193(A)(3) ........................................................... 9

Cal. Code Regs. tit. 13
    § 2014(a) ................................................................................ 16
    § 2014(b) ................................................................................ 16
    § 2014.3 ................................................................................. 20
    § 2015(a) ................................................................................ 17
    § 2015(a)(3) ............................................................................ 16
    § 2015(b) ........................................................................... 16, 17
    § 2015.1 ................................................................................. 10
    § 2015.2 ................................................................................. 10
    § 2015.4 ................................................................................. 10
    § 2015.6 ................................................................................. 20
    § 2016(c) ........................................................................... 10, 11
    § 2016(g) ................................................................................ 20

Cal. Gov. Code § 12607 ................................................................... 20

Cal. Health & Safety Code
    § 42403(a) .............................................................................. 20
    § 43031 .................................................................................. 20

Ga. Code Ann. § 48-7-40.1(a)(2) .......................................................... 4

Utah Code Ann. § 59-10-1033.1(2)(a) ..................................................... 4

**Other Authorities**

*Annual Hydrogen Evaluation*, CARB (Dec. 6, 2023),
    https://perma.cc/2KLS-URBD ...................................................... 7

Antonin Scalia & Bryan Garner, *Reading Law* (2012) .................................. 15

Federal Rule of Civil Procedure
    8(a) ...................................................................................... 1
    12(b) ............................................................................... *passim*

S. Rep. No. 403, 90th Cong., 1st Sess. 33 (1967) ...................................... 19

**INTRODUCTION**

Advanced Clean Fleets is a collection of rules that forces trucking companies with only minimal California contacts to add battery-electric trucks to their fleets and stop operating internal-combustion trucks. Plaintiffs—a collection of States and an association of trucking industry firms—sued to stop California's overreach. Advanced Clean Fleets is unlawful for three reasons. *First*, the regulation is preempted by the Clean Air Act, which prohibits States from enacting emissions standards for vehicles. California can seek a preemption waiver from the Environmental Protection Agency (EPA) to enforce some emissions standards, but it has not obtained such a waiver here. *Second*, Advanced Clean Fleets is preempted by the Federal Aviation Administration Authorization Act of 1994 because the penalty-backed switch to battery-electric trucks will force trucking companies to increase "prices," alter "routes," and decrease the "services" they presently provide. *Third*, the regulation violates the dormant Commerce Clause because it singles out for onerous regulation one of the key instrumentalities of interstate commerce: trucks.

Advanced Clean Fleets has inflicted multiple injuries on the 18 Plaintiffs to this suit. Defendants' standing arguments lack merit. And Defendants highlight the weakness of their arguments by asking the Court to grant their Rule 12(b) motion based on more than 400 pages of documents that they have produced to the Court. If anything, Defendants' motion suggests the case should be allowed to proceed to discovery. Defendants also attack the sufficiency of Plaintiffs' claims, but those arguments likewise fail. Defendants have not carried their burden for dismissal.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a) requires pleadings to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). To satisfy that burden, Plaintiffs must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). At the motion to dismiss stage, a complaint needs only to plausibly allege facts needed to support the case. *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As applied to standing, at "the pleading stage, general factual allegations of injury . . . suffice," because a court must "presume that general allegations

1   embrace those specific facts that are necessary to support the claim." *Bennett v. Spear*, 520 U.S.

2   154, 168 (1997) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). When evaluating a

3   motion to dismiss, the Court must accept the factual allegations of the complaint as true and must

4   draw all reasonable inferences in favor of the non-moving party. *Cruz v. Beto*, 405 U.S. 319, 322

5   (1972). "All that matters . . . is that the allegations nudge [the claims] 'across the line from

6   conceivable to plausible.'" *OSU Student All. v. Ray*, 699 F.3d 1053, 1078 (9th Cir. 2012) (quoting

7   *Iqbal*, 556 U.S. at 680).[1]

8                                          **ARGUMENT**

9   **I.      All Plaintiffs Have Standing.**

10          The Complaint plausibly alleges that all Plaintiffs have standing. Plaintiffs pleaded facts

11  that show they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged

12  conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."

13  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Defendants do not dispute that Plaintiffs have

14  alleged injuries. They challenge causation and redressability alone. And their motion relies in large

15  part on facts "beyond the face of the complaint," highlighting the inappropriateness of dismissal at

16  the Rule 12(b) stage. *Lucas v. Bechtel Corp.*, 633 F.2d 757, 759 (9th Cir. 1980). In addition, a single

17  plaintiff's standing is enough to defeat a motion to dismiss. "If at least one plaintiff has standing,

18  the suit may proceed." *Biden v. Nebraska*, 143 S. Ct. 2355, 2365 (2023); *see also N.D. v. Reykdal*,

19  102 F.4th 982, 990 (9th Cir. 2024).

20          **A.      State Plaintiffs Have Standing.**

21                  **1.      The Complaint alleges, and Defendants do not disagree, that Advanced
22                            Clean Fleets will increase the number of battery-electric trucks in
                              Plaintiffs' States.**

23          Defendants do not contest that State Plaintiffs allege plausible injuries-in-fact. They also

24  acknowledge that the Complaint offers a theory of causation and redressability: that because of

25  Advanced Clean Fleets, "more 'battery electric trucks' will 'travel through each of Plaintiff's

26  States.'" ECF No. 68-1, at 5 (quoting Compl. ¶ 123, and citing *id.* ¶¶ 126, 143, 146–47). Nor do

27  _____
          [1] Defendants' motion includes an argument that Plaintiffs cannot challenge the State and
28  Local Fleet Requirements. ECF No. 68-1, at 11–12. Plaintiffs do not dispute that point and are not
    maintaining a challenge to that aspect of Advanced Clean Fleets.

1   they dispute that their regulation applies to many trucks that spend significant time outside

2   California including in Plaintiffs' States. *See* Compl. ¶¶ 72, 75, 253, 260–64. Defendants' lead

3   argument questions the plausibility of State Plaintiffs' standing by claiming increases in battery-

4   electric trucks in Plaintiffs' States "could easily" be attributed to "other factors." ECF No. 68-1, at

5   5–6. But Defendants wrongly presume that an injury with multiple causes is traceable to none or

6   only some of those causes. Article III standing does not require the defendant's action to be the

7   "sole source" of injury. *Barnum Timber Co. v. EPA*, 633 F.3d 894, 901 (9th Cir. 2011). Plaintiffs

8   "need not eliminate any other contributing causes to establish [their] standing." *Id.* "[T]he ability

9   'to effectuate a partial remedy' satisfies the redressability requirement." *Uzuegbunam v.*

10  *Preczewski*, 141 S. Ct. 792, 801 (2021) (quoting *Church of Scientology of Cal. v. United States*,

11  506 U.S. 9, 13 (1992)). "While other factors may also cause additional [battery-electric truck]

12  traffic" in Plaintiffs' States, the existence of other factors does not preclude a lawsuit challenging

13  injuries caused by Advanced Clean Fleets. *Ocean Advocs. v. U.S. Army Corps of Eng'rs*, 402 F.3d

14  846, 860 (9th Cir. 2005).

15       Defendants are also wrong to seek this Court's ruling on the causes of State Plaintiffs'

16  injuries at the Rule 12(b) stage. Defendants claim that their own factual allegations ought to be

17  accepted as true, even though the Court must draw all reasonable inferences in favor of State

18  Plaintiffs. *Cruz*, 405 U.S. at 322. But even taking their factual assertions at face value, Defendants

19  do not claim that projected sales of heavy-duty vehicles, a few state statutes, and federal emissions

20  standards *will* increase battery-electric truck traffic in Plaintiffs' States—only that they "*may*" or

21  "*could easily*" increase such traffic. ECF No. 68-1, at 5–6 (emphasis added). In other words, even

22  Defendants do not rule out Advanced Clean Fleets as a cause of increases in battery-electric trucks

23  in Plaintiffs' States. At most, Defendants have exposed a factual dispute, and district courts "must

24  resolve all factual disputes in favor of the plaintiffs in a motion to dismiss under Fed. R. Civ. P.

25  12(b)(6)." *Russell v. Landrieu*, 621 F.2d 1037, 1042 (9th Cir. 1980).

26       Finally, none of the three alternative causes suggested by Defendants makes State Plaintiffs'

27  standing implausible. *First*, Defendants assert that some heavy-duty vehicle manufacturers have

28  projected that battery-electric vehicles will account for half of their heavy-duty vehicle sales by

2030 and that "multiple companies have committed to purchase" battery-electric trucks. ECF No. 68-1, at 5–6. That does not exclude Defendants' actions as a partial cause of those increased battery-electric truck sales and is consistent with State Plaintiffs' standing. *Second*, Defendants cite three state statutes as evidence that State Plaintiffs encourage battery-electric trucks in their States. One of those statutes is from Nevada, which is not a plaintiff. That statute says nothing about State Plaintiffs' position on battery-electric trucks. The Georgia statute is not limited to electric vehicles but instead promotes all businesses "engaged in manufacturing," Ga. Code Ann. § 48-7-40.1(a)(2), and the Utah statute is a limited, experimental tax credit that sunsets after 2030, Utah Code Ann. § 59-10-1033.1(2)(a). Neither statute is like Advanced Clean Fleets, which seeks to *ban* internal-combustion trucks. Defendants cite nothing from 15 of the 17 State Plaintiffs.

*Third*, Defendants note that battery-electric truck use is forecasted to increase because of recent federal emissions standards. Those standards are being challenged. *See Nebraska v. EPA*, No-24-1129 (D.C. Cir). But even if they were not, neither case Defendants cite supports their contention that a federal regulation but not their regulation (which they do not dispute will apply to trucks in Plaintiffs' States) must be the cause of State Plaintiffs' injuries. *Chamber of Com. v. EPA*, 642 F.3d 192, 206 (D.C. Cir. 2011), held that a challenge to a California emissions standard was moot because, after suit was filed, California "amended its regulations to deem compliance with [EPA's] national standards as compliance with its own." The regulation here, however, has not been amended to deem compliance with federal standards sufficient to comply with Advanced Clean Fleets, so Plaintiffs remain harmed by Advanced Clean Fleets regardless of any federal standards. *Ohio v. EPA*, 98 F.4th 288 (D.C. Cir. 2024), did not even address federal emissions standards. *Ohio* merely made clear that plaintiffs must specifically allege and argue redressability when it is "unclear whether their claims [are] redressable." *Id.* at 304. The Complaint does just that. Compl. ¶¶ 123, 126, 143, 146–47, 153. And in any event, "factual information asserted in [administrative materials] cannot be used to create or resolve disputed issues of material fact." *Coal. for a Sustainable Delta v. McCamman*, 725 F. Supp. 2d 1162, 1184 (E.D. Cal. 2010).

Defendants also cite *Murthy v. Missouri*, 144 S. Ct. 1972, 1986 (2024), for the proposition that State Plaintiffs' injures "could easily be the result of these 'independent action[s]' by 'third

1    part[ies] not before the court.'" ECF No. 68-1, at 6. But nothing in *Murthy* allows a defendant to

2    defeat state standing by claiming something else "could easily be" a cause. In addition, Defendants'

3    conduct is altogether different from the *Murthy* defendants. Whereas the latter merely "pressur[ed]

4    or encourag[ed]" social media platforms to censor their content, *Murthy*, 144 S. Ct. at 1986,

5    Defendants have compelled fleet operators to transition their fleets to battery-electric vehicles,

6    Compl. ¶¶ 67–78. There is no need for "guesswork as to how independent decisionmakers will

7    exercise their judgment." ECF No. 68-1, at 5 (quoting *Murthy*, 144 S. Ct. at 1986). Advanced Clean

8    Fleets mandates a transition to battery-electric trucks.

9                    **2.      State Plaintiffs have plausibly alleged *parens patriae* standing.**

10   State Plaintiffs have also plausibly alleged a quasi-sovereign injury traceable to Advanced

11   Clean Fleets to establish *parens patriae* standing. The Complaint alleges that the regulation will

12   harm "the health and well-being—both physical and economic—of [State Plaintiffs'] residents" in

13   three ways. *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 607 (1982). The increased

14   battery-electric truck traffic in Plaintiffs' States caused by Advanced Clean Fleets will: (1) disrupt

15   the trucking, farming, and biofuel industries that drive State Plaintiffs' economies, Compl. ¶¶ 155–

16   70, (2) increase prices for consumers in Plaintiff States, Compl. ¶ 160, and (3) increase the risk of

17   fatal accidents on Plaintiff States' roads, Compl. ¶¶ 171–76.

18   Defendants rely nearly exclusively on *Missouri ex rel. Koster v. Harris*, 847 F.3d 646 (9th

19   Cir. 2017). In *Koster*, a group of States challenged a California regulation prescribing conditions

20   for chickens whose eggs were to be sold in California. *Id.* at 650. The States lacked *parens patriae*

21   standing because (1) the harm to egg farmers did not state an interest apart from particular private

22   parties, *id.* at 652–53, (2) the States alleged that egg prices would "fluctuate" but did not say

23   whether egg prices would rise or fall, *id.* at 653–54, and (3) the challenged regulation did not treat

24   in-state and out-of-state eggs differently, *id.* at 655. The Complaint here avoids these pitfalls.

25           a.      Defendants suggest that *Koster* disallows State Plaintiffs' economic-disruption

26   claim because the trucking, farming, and biofuel "industries may bring suit themselves," painting

27   the Complaint as affecting only those industries. ECF No. 68-1, at 7. But that misunderstands State

28   Plaintiffs' claim. The Complaint alleges that the trucking, farming, and biofuel industries are

1    "major economic drivers for State Plaintiffs" such that the increase in battery-electric trucks caused

2    by Advanced Clean Fleets and decrease in internal-combustion trucks "will harm the States'

3    economies—and thus the economic well-being of all their citizens" beyond those working in these

4    industries. Compl. ¶ 170. A large share of the goods that citizens in Plaintiffs' States purchase are

5    delivered by the trucking industry. Compl. ¶ 158. The same cannot be said of the egg farmers in

6    *Koster*. Nor did the *Koster* States identify egg production as a major driver for their state economies.

7    847 F.3d at 655 (eggs "lack[] [] central economic significance to a state").

8         Moreover, the regulation in *Koster* regulated only eggs sold in California. Advanced Clean

9    Fleets is not so limited. Defendants do not dispute that the regulation applies to trucks that spend

10   364 days outside of California per year. *See* Compl. ¶¶ 72, 75. The effects of the *Koster* regulation

11   were borne by Californians. But the effects of Advanced Clean Fleets will be felt far beyond the

12   California border in Plaintiffs' States. *See id.* ¶¶ 95–104. Also, unlike *Koster*, industry *has* joined

13   this suit as a co-plaintiff. Defendants contradict themselves in insisting that the trucking industries

14   in Plaintiffs' States can "bring suit themselves" while claiming Nebraska's trucking industry lacks

15   standing. ECF No. 68-1, at 7, 10–11. State Plaintiffs have properly brought this suit to vindicate

16   their citizens' "economic and commercial interests." *Snapp*, 458 U.S. at 609.

17        b.    State Plaintiffs also rely on a consumer-price theory that differs from *Koster*. The

18   *Koster* States alleged that "fluctuations in the price of eggs will harm consumers," but the

19   Complaint failed to explain whether egg "prices will go either up or down." 847 F.3d at 653. Here,

20   the Complaint is specific: "Increased compliance costs will be passed down the supply chain and

21   ultimately will be borne by consumers in the form of *higher prices* for *food and other basic goods*."

22   Compl. ¶ 160 (emphasis added). Defendants complain that this allegation is couched in "conclusory

23   terms." ECF No. 68-1, at 7. It is not. The Complaint explains the trucking industry's significance

24   in Nebraska, Compl. ¶ 157, identifies the specific share of Nebraska's freight that is delivered by

25   the trucking industry, *id.* ¶ 158, notes that Advanced Clean Fleets will increase compliance costs

26   for these companies, *id.* ¶ 159, and alleges that those costs will be passed onto end-consumers, *id.*

27   ¶ 160. The Complaint plausibly alleges that the economic harm to be caused by Advanced Clean

28   Fleets is "certainly impending" because battery-electric trucks—and its attendant cost increases—

1  are soon to be exported to Plaintiffs' States. *See* Compl. ¶¶ 123, 126, 143, 146–47.

2        Nothing requires State Plaintiffs to identify the trucks and fleet companies that carry goods

3  to Plaintiffs' States. The Complaint alleges that prices for "food and other basic goods" will rise,

4  Compl. ¶ 160; Defendants cite nothing requiring Plaintiffs to specify that this includes avocados

5  grown in California. A complaint must only "give the defendant fair notice of what the claim . . .

6  is and the grounds upon which it rests." *Mohsin v. Cal. Dep't of Water Res.*, 52 F. Supp. 3d 1006,

7  1010 (E.D. Cal. 2014) (quoting *Twombly*, 550 U.S. at 555). "[A] complaint attacked by a Rule

8  12(b)(6) motion to dismiss does not need detailed factual allegations" to survive dismissal.

9  *Twombly*, 550 U.S. at 555; *see Bennett*, 520 U.S. at 168 ("at the pleading stage, general factual

10  allegations of injury . . . suffice" because a court must "presume that general allegations embrace

11  those specific facts that are necessary to support the claim") (quoting *Lujan*, 504 U.S. at 561).

12       c.    Finally, Defendants simply disagree with the Complaint's factual allegation that

13  "accidents involving heavy-duty ZEVs are 'more likely to be severe.'" ECF No. 68-1, at 8. That

14  dispute should not be resolved on a Rule 12(b) motion. Defendants do not contest that—if true—

15  the increased risk of fatal accidents from battery-electric trucks would sufficiently state a quasi-

16  sovereign injury. Indeed, State Plaintiffs may protect the "physical" "health and well-being" of

17  their residents in a *parens patriae* suit. *Snapp*, 458 U.S. at 607. And CARB confirms State

18  Plaintiffs' "assum[ption]" that "fleets will opt for 'battery electric trucks," instead of "hydrogen

19  fuel-cell trucks." ECF No. 68-1, at 8. Its website highlights the mere "*potential* of hydrogen as a

20  zero-emission vehicle fuel option" and acknowledges the "barriers of operating and growing the

21  state's hydrogen fueling network." *Annual Hydrogen Evaluation*, CARB (Dec. 6, 2023),

22  https://perma.cc/2KLS-URBD (emphasis added). For all intents and purposes, "zero-emission

23  heavy-duty vehicles" means "battery-electric vehicles" at least for now.

24       **3.**    **State Plaintiffs' other standing theories meet the plausibility standard.**

25       Defendants also make unpersuasive criticisms of State Plaintiffs' remaining theories of

26  standing. Defendants do not argue that any of these injuries are not legally cognizable. Instead, they

27  rehash the traceability and redressability arguments that their motion begins with. Those

28  contentions are as wrong when applied to State Plaintiffs' pocketbook harms for all the reasons

they fail when applied to State Plaintiffs' other standing theories. *See* Part I.A.1., *supra*. Defendants attack State Plaintiffs' standing based on lost fuel tax revenue because the Complaint does not quantify the losses attributable to Advanced Clean Fleets. But they cite nothing establishing that as a requirement. The Complaint devotes two-and-a-half pages to explaining the tax revenue standing. The Complaint details the amount of several States' fuel taxes, the amount of revenue those taxes generate, and how decreases in fuel tax revenue affect State Plaintiffs' budgets. Compl. ¶¶ 109–112. As for causation, it explains that trucks traveling between California and Plaintiffs' States refuel in Plaintiffs' States, even identifying the roads those trucks travel on. *Id.* ¶ 113–22.

It also is no answer that two of the 17 Plaintiffs' States tax electricity and a third charges higher vehicle registration rates for electric vehicles. States have "standing to challenge [Advanced Clean Fleets] even though" they may "enjoy[] some offsetting benefits from the operation of the current regulation." *L.A.Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 657 (9th Cir. 2011). "There is harm in" reducing fuel tax revenues "no matter what the [Plaintiff States] may have saved" by taxing electricity. *Aluminum Co. of Am. v. Bonneville Power Admin.*, 903 F.2d 585, 590 (9th Cir. 1989). Decreases in tax revenue like those suffered by State Plaintiffs are injuries that confer standing. *See Wyoming v. Oklahoma*, 502 U.S. 437 (1992); *see also City of Oakland v. Lynch*, 798 F.3d 1159, 1164 (9th Cir. 2015); *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1198 (9th Cir. 2004).

Finally, the Complaint plausibly alleges that Advanced Clean Fleets will cause truck manufacturers to cross-subsidize battery-electric truck production by increasing the prices they charge for internal-combustion trucks. Compl. ¶ 152. Defendants state in conclusory terms that this allegation is not plausible. But Defendants do not dispute that State Plaintiffs (and NTA members) own and purchase medium- and heavy-duty trucks. *Id.* ¶ 149–51. And Given California's market size, the 2036 ban on selling internal-combustion trucks in the State will increase the prices Plaintiffs pay for new heavy-duty trucks (whether battery-electric or internal-combustion), and at a minimum will decrease the number of the internal-combustion trucks on the market that Plaintiffs prefer to buy. *See Ctr. for Auto Safety v. NHTSA.*, 793 F.2d 1322, 1324 (D.C. Cir. 1986); *Competitive Enter. Inst. v. NHTSA*, 901 F.2d 107, 112–13 (D.C. Cir. 1990).

**B.    The Arizona State Legislature Has Standing.**

Along with the 16 State Plaintiffs, the Arizona State Legislature has standing. Defendants misunderstand the Arizona State Legislature's theory of standing. Unlike the Virginia House in *Virginia House of Delegates v. Bethune-Hill*, 587 U.S. 658 (2019), the Arizona State Legislature is not purporting "to litigate on the State's behalf." *Id.* at 663. It sues to vindicate *its own* rights and to seek redress for injuries that Advanced Clean Fleets causes the Legislature, not the State of Arizona (which is not a party to this case). Compl. ¶ 16. That explains why Defendants' citation of Ariz. Rev. Stat. § 41-193(A)(3) is inapposite.

The Complaint notes and Defendants do not dispute that "chamber rules" in the Arizona State Legislature's two houses "authorize[] . . . legal actions on behalf of the Arizona Senate and the Arizona House of Representatives." Compl. ¶ 17. Likewise, *Arizona State Legislature v. Arizona Independent Redistricting Comm'n*, 576 U.S. 787 (2015), which Defendants cite, recognized that "[t]he Arizona Legislature . . . is an institutional plaintiff asserting an institutional injury, and it commenced this action after authorizing votes in both of its chambers." *Id.* at 802.

Finally, the injuries Advanced Clean Fleets will cause Plaintiff States—damage to roads and decreased fuel tax revenues, to name two—will be borne by the Legislature as well. *See* Compl. ¶ 145. The Legislature's "legislative interests" are implicated by Advanced Clean Fleets because it requires the Legislature to respond by increasing appropriations or cutting spending to address the loss of fuel tax revenues and to appropriate more money to repair the roads that Advanced Clean Fleets guarantees will degrade more quickly. *See id.* ¶ 106–25, 138–45. The fact the same injuries are pecuniary injuries for State Plaintiffs does not mean they are not institutional injuries for the Arizona State Legislature. *Arizona State Legislature* does not limit the Legislature to standing theories that "strip[] [it] of its powers." ECF No. 68-1, at 10. Regardless, reduced revenue does at least limit a legislature's power to authorize appropriations.

**C.    The Nebraska Trucking Association Has Standing.**

The Nebraska Trucking Association (NTA) has standing because its members operate in California and are directly regulated by Advanced Clean Fleets. Compl. ¶¶ 47, 177. The NTA has associational standing if: "(a) its members would otherwise have standing to sue in their own right;

(b) the interests it seeks to protect are germane to the organization's purposes; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Ecological Rts. Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1147 (9th Cir. 2000) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).

Citing *Summers v. Earth Island Institute*, 555 U.S. 488 (2009), Defendants try to add a fourth element: identifying individual members who are affected. But no members need to be named in the complaint "where it is relatively clear" that "one or more members have been or will be adversely affected by a defendant's action." *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015). The Complaint alleges that NTA has members that operate in California and are directly regulated by Advanced Clean Fleets, thus making its standing "easy to establish." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 382 (2024); Compl. ¶¶ 47, 177. Those members must spend money to comply with the purchase mandates and spend time and resources to comply with the reporting requirements. Cal. Code Regs. tit. 13, §§ 2015.1, 2015.2, 2015.4; Compl. ¶¶ 47, 69–78, 84–90, 100–01, 177. In any event, the declarations submitted with this opposition identify three injured members by name. *See* Exhibits B, C, D.

Defendants do not appear to dispute that NTA also satisfies the second and third elements of associational standing. NTA is "devoted to advancing the interests of its motor carrier and allied members," so its interests are germane to its members in this suit. Compl. ¶ 46; *see Ecological Rts. Found.*, 230 F.3d at 1147; Exhibit A ¶¶ 3–4. And NTA does not seek money damages, so individual member participation is unnecessary. *See Hunt*, 432 U.S. at 344.

**II.     The 2036 Sales Requirement Is Ripe for Review.**

Beginning in 2036, Advanced Clean Fleets imposes a complete ban in California on the production and delivery for sale of internal-combustion trucks. Cal. Code Regs., tit., 13, § 2016(c). Defendants argue that this 2036 sales requirement (1) does not impose an imminent injury to any Plaintiff, and (2) cannot be challenged because the manufacturers have voluntarily said they will comply. ECF No. 68-1, at 11. Both arguments are wrong.

The 2036 sales requirement causes a "certainly impending" injury to all Plaintiffs. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158

1    (1990)). Citing *Clapper*, Defendants claim the challenge to the 2036 sales requirement is not ripe

2    because it "takes effect more than ten years from now." ECF No. 68-1, at 11. *Clapper* wondered

3    whether certain communications with foreign contacts would *ever* be unlawfully intercepted. 568

4    U.S. at 410. That is not a question here. Plaintiffs (and manufacturers) know *exactly* when the sales

5    ban kicks in: 2036. Cal. Code Regs., tit., 13, § 2016(c). Plaintiffs "do[] not have to await the

6    consummation of threatened injury to obtain preventive relief. If the injury is certainly impending,

7    that is enough." *Pennsylvania v. West Virginia*, 262 U.S. 553, 593 (1923). "Where the inevitability

8    of the operation of a statute against certain individuals is patent, it is irrelevant to the existence of

9    a justiciable controversy that there will be a time delay before the disputed provisions will come

10   into effect." *Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*, 559 U.S. 662, 670 n.2 (2010) (quoting

11   *Reg'l Rail Reorg. Act Cases*, 419 U.S. 102, 143 (1974)); *see also Geo Grp., Inc. v. Newsom*, 50

12   F.4th 745, 754 (9th Cir. 2022) (finding alleged injuries "sufficiently imminent even though they

13   will not occur for at least two years"). It is inevitable that the sales ban will kick in in 2036, so

14   Plaintiffs may sue to enjoin enforcement of that regulation now.

15        In any event, manufacturers must start ramping up their battery-electric truck production

16   well in advance to meet the 2036 mandate because switching from internal-combustion truck

17   production to battery-electric truck production cannot happen overnight. *Ohio v. EPA*, 98 F.4th

18   288, 302 (D.C. Cir. 2024), recognizes that "manufacturers need years of lead time to make changes

19   to their future model year fleets." Defendants do not explain when a challenge to the 2036 sales

20   ban could be brought if not now. At some point, Plaintiffs' injuries will not be redressable because

21   a later challenge "may not result in any change on the part of automobile manufacturers," who lock

22   in production schedules years before a model year's production. *Id.* at 302, 304.

23        Defendants also suggest that Plaintiffs will not be injured by the 2036 sales ban because

24   they are not truck manufacturers. But Plaintiffs are internal-combustion truck purchasers. Compl.

25   ¶¶ 148–53. And California's artificially eliminating the supply of internal-combustion trucks

26   available for purchase in California is "a lost opportunity to purchase vehicles of choice" that "is

27   sufficiently personal and concrete to satisfy Article III requirements." *Competitive Enter. Inst.*, 901

28   F.2d at 113. The Complaint also alleges that the 2036 sales ban will increase the prices of internal-

1   combustion trucks sold nationwide due to manufacturers' cross-subsidizing the cost of selling

2   battery-electric trucks in California. Compl. ¶ 152. Whether Plaintiffs purchase heavy-duty trucks

3   in California or elsewhere in the Nation (whether battery-electric or internal-combustion), they will

4   be harmed by the 2036 sales ban. *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S.

5   246, 255 (2004) (recognizing that sales mandate is the flip side of a purchasing mandate).

6          Finally, Defendants claim that an injunction prohibiting enforcement of the 2036 sales ban

7   would not redress Plaintiffs' injuries because some truck manufacturers have agreed to comply

8   with the ban. ECF No. 68-1, at 11. The agreement Defendants cite is beyond the scope of the

9   Complaint and should not be considered in this motion to dismiss.[2] But even if it were properly

10  before the Court (and were lawful and enforceable), Defendants fail to mention that *they* procured

11  this agreement. RJN Ex. B, at 1. Accepting Defendants' argument would permit regulators to

12  insulate their regulations from litigation through private agreements. In addition, these agreements

13  do not show that the injury caused by the 2036 sales ban is caused solely by "'the independent

14  action of some third party'—a manufacturer" rather than by the sales ban itself. ECF No. 68-1, at

15  11 (quoting *Lujan*, 504 U.S. at 560). Not every heavy-duty truck manufacturer is a member to the

16  agreement.[3] For the manufacturers that did not sign on, the continued vitality of the 2036 sales ban

17  has real-world repercussions—just as it does for purchasers like Plaintiffs. If the 2036 sales ban

18  were enjoined from enforcement, then at least some California manufacturers would continue to

19  produce internal-combustion trucks, making it likely that an injunction would redress Plaintiffs'

20  injuries. *M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018).

21  **III.   The Complaint States a Clean Air Act Preemption Claim.**

22         Defendants also challenge each of Plaintiffs' claims. Defendants do not dispute that the

23  Complaint states a legally sufficient Clean Air Act (CAA) claim. They make a jurisdictional

24  _____

25  [2] Plaintiffs do not oppose judicial notice of the *existence* of the agreement but do oppose judicial notice of any facts or inferences from the agreement, including that it is lawful. *See* Plaintiffs' Partial Opposition to Defendants' Request for Judicial Notice at 3 (Sept. 11, 2024).

26  [3] Only members of the Truck and Engine Manufacturers Association ("EMA") signed the agreement. Defendants have not alleged (nor could they) that non-members or new entries into the California market might not voluntarily comply with the 2036 sales ban if its enforcement were

27  enjoined. Ford Motor Company, Eaton, and BorgWarner, for example, manufacture engines and/or

28  trucks and are not members of the EMA nor signatories to the agreement. *See* RJN Ex. B.

1  argument by suggesting the claim requires this Court to hold that the EPA cannot grant a CAA

2  waiver. But that is not an element of a CAA preemption claim, and it certainly is not the "gravamen"

3  of the claim. ECF No. 68-1, at 12. The Complaint's statement of the CAA claim does not even

4  place the possibility of a waiver at issue. Compl. ¶¶ 267–72. The CAA states: "No State or any

5  political subdivision thereof shall adopt or attempt to enforce any standard relating to the control

6  of emissions from new motor vehicles or new motor vehicle engines subject to this part." 42 U.S.C.

7  § 7543(a). The EPA's future grant of a waiver might be a defense to this claim, but Defendants

8  admit they have not received one. ECF No. 68-1, at 12.

9      Defendants gave Advanced Clean Fleets an effective date of January 1, 2024—before

10  receiving a waiver. Compl. ¶ 63. But the CAA "requires California to obtain EPA authorization

11  *prior to* enforc[ing]" a preempted regulation. *Pac. Merch. Shipping Ass'n v. Goldstene*, 517 F.3d

12  1108, 1115 (9th Cir. 2008) (emphasis added). Defendants do not dispute they lack a preemption

13  waiver, that they need one to avoid preemption, and that Advanced Clean Fleets is in effect. Compl.

14  ¶¶ 63, 196–97. There is no reason this Court cannot apply the CAA to Advanced Clean Fleets today

15  and determine it is preempted. If the possibility of a waiver sufficed to preclude a CAA claim,

16  Defendants could postpone litigation in perpetuity through recurring waiver requests.

17      Even if the availability of a waiver were an element of Plaintiffs' claim, that would not

18  deprive this Court of jurisdiction. This Court has "original jurisdiction of *all* civil actions arising

19  under the . . . laws . . . of the United States," including the CAA. 28 U.S.C. § 1331 (emphasis

20  added). Defendants cite nothing depriving this Court of jurisdiction over a CAA preemption claim.

21  Section 7543(b)(1) gives EPA the authority to grant a waiver but contains no jurisdiction stripping

22  language. Section 7607 requires "[a] petition for review" challenging certain EPA actions,

23  including CAA waivers, to be filed in the D.C. Circuit. 42 U.S.C. § 7607(b)(1). But Defendants do

24  not argue that they are the EPA, that Plaintiffs' Complaint is a petition for review, or that EPA has

25  taken action that could be subject to a petition for review. Nor is this case analogous to *In re Murray

26  Energy Corp.*, 788 F.3d 330, 333–34 (D.C. Cir. 2015), where petitioners sued a federal agency to

27  challenge a proposed rule of *that* agency. As Defendants acknowledge, "Plaintiffs have sued

28  *California officials*, not EPA." ECF No. 68-1, at 13. And unlike the *Murray Energy* proposed rule,

1   Advanced Clean Fleets has taken effect. Compl. ¶ 63.

2       In addition, if the possibility of a waiver did bear on Plaintiffs' claim, the equal sovereignty

3   barrier to the EPA granting such a waiver would be at issue. Section 209(b)'s waiver provision

4   allows California—and only California—to enact vehicle emissions standards. Compl. ¶¶ 189–90.

5   That violates the equal sovereignty of the States under the Constitution. "[T]he whole Federal

6   system is based upon the fundamental principle of the equality of the states under the Constitution."

7   *Bolln v. Nebraska*, 176 U.S. 83, 89 (1900); *see also Shelby County v. Holder*, 570 U.S. 529, 544

8   (2013) ("[O]ur Nation 'was and is a union of States, equal in power, dignity, and authority.'")

9   (quoting *Coyle v. Smith*, 221 U.S. 559, 567 (1911); *World-Wide Volkswagen Corp. v. Woodson*,

10  444 U.S. 286, 292–93 (1980) (explaining that States' "status as coequal sovereigns" is "implicit in

11  . . . the original scheme of the Constitution"). Each State thus has the constitutional right, "to have

12  and enjoy the same measure of local or self government, and to be admitted to an equal participation

13  in the maintenance, administration, and conduct of the common or national government." *Case v.

14  Toftus*, 39 F. 730, 731-32 (C.C.D. Or. 1889).[4]

15  **IV.    The Complaint States an FAAAA Claim.**

16      The Federal Aviation Administration Authorization Act of 1994 (FAAAA) streamlines and

17  nationalizes the regulation of motor carriers. Compl. ¶¶ 209–14; *Rowe v. N.H. Motor Transp. Ass'n*,

18  552 U.S. 364, 369–71 (2008). For that reason, it preempts state regulations that are "related to a

19  price, route, or service of any motor carrier . . . with respect to the transportation of property." 49

20  U.S.C. § 14501(c)(1). Advanced Clean Fleets is related to all three and is therefore preempted.

21      **A.    The FAAAA and Clean Air Act § 209(b) peaceably coexist.**

22      Defendants seek dismissal of Plaintiffs' FAAAA claim on the argument that Plaintiffs'

23  interpretation of the FAAAA would clash with CAA § 209(b), the preemption waiver provision.

24  To start, CAA § 209(b) is not implicated here because, as Defendants admit, "EPA has not yet

---

25  [4] Plaintiff States recognize that the D.C. Circuit recently rejected a similar challenge to
26  § 209(b) in *Ohio v. EPA*, 98 F.4th 288 (D.C. Cir. 2024). But that case is not controlling in this circuit, and the petitioners in *Ohio* have petitioned for certiorari. ECF No. 68-1, at 13. In any event, *Ohio* involved different parties than this suit, so Plaintiffs, even those who were petitioners in *Ohio*,
27  are not precluded from challenging § 209(b)'s validity again in this lawsuit. *Cf. Ashe v. Swenson*, 397 U.S. 436, 443 (1970) (explaining that issues of "fact . . . cannot again be litigated *between the
28  same parties* in any future lawsuit") (emphasis added).

1    waived CAA preemption for the addition of ACF to California's vehicle emissions program." ECF

2    No. 68-1, at 12; Compl. ¶ 196. And nothing about CAA preemption even remotely contradicts the

3    FAAAA. Both preemption provisions further the same goal of uniform standards for motor carriers.

4         Without a waiver in hand, Defendants build their FAAAA argument on an assumption and

5    contradiction. In their CAA argument, they insist "[t]his Court has no power to decide what actions

6    EPA can and cannot take under the waiver provision." ECF No. 68-1, at 13. Yet their primary

7    FAAAA argument assumes EPA has power to grant a waiver, *id.* at 14, an assumption they

8    acknowledge Plaintiffs dispute, *id.* at 12. All the while, nothing in Defendants' memorandum

9    explains why EPA could waive the CAA for Advanced Clean Fleets. Nonetheless, Defendants

10   proceed on the assumption that EPA can waive the CAA for Advanced Clean Fleets to argue the

11   FAAAA cannot preempt the same regulation. Defendants cannot have it both ways on the CAA

12   and FAAAA claims. There is no reason two federal statutes cannot preempt the same regulation.

13        In any event, Plaintiffs' interpretation of the FAAAA is wrong. "To the extent two federal

14   laws appear to conflict, [courts] attempt to harmonize them." *Swinomish Indian Tribal Cmty. v.*

15   *BNSF Ry*, 951 F.3d 1142, 1156 (9th Cir. 2020); *see* Antonin Scalia & Bryan Garner, *Reading Law*

16   188–90 (2012) (defining harmonious-reading canon). If EPA grants a waiver of the CAA's

17   preemption provision, all that is waived is application "of this section," i.e., Clean Air Act § 209.

18   42 U.S.C. § 7543(b). EPA cannot waive application of the FAAAA's preemption provision, an

19   entirely different statute implemented by a different agency. The FAAAA did not change how CAA

20   § 209(b) works; it simply added an additional preemption bar that may apply to all or part of some

21   regulations subject to an EPA waiver. No State, California included, can enact a regulation that

22   affects the prices, routes, and services with respect to the transportation of property.

23        The FAAAA interpretation suggested by Defendants—not Plaintiffs—brings disharmony

24   to the two statutes by creating a CAA exception to the FAAAA that Congress did not authorize.

25   ECF No. 68-1, at 15. The only disharmony is between Advanced Clean Fleets and the FAAAA, but

26   no canon forces a harmonious interpretation on an express federal preemption statute to save an

27   otherwise preempted state regulation. Many emissions standards ratified by a CAA preemption

28   waiver will not implicate the FAAAA. As one example, Advanced Clean Cars, the light-duty cousin

to the regulation here, requires "a certain percentage of new vehicles manufactured in the state each year be zero-emissions vehicles." *Ohio*, 98 F.4th at 293. Advanced Clean Cars did not raise a FAAAA problem, presumably because light-duty vehicles—unlike the trucks at issue here—are generally used in the "transportation of" people, not "property." 49 U.S.C. § 14501(c)(1). Advanced Clean Fleets, however, raises concerns about the efficiency of interstate transportation and implicates the FAAAA. Nothing in the CAA or FAAAA prohibits both from preempting regulations like these.

> **B.    Plaintiffs plausibly allege an FAAAA claim.**

1.      Plaintiffs properly alleged that the FAAAA facially preempts Advanced Clean Fleets. The regulation applies to "motor carriers" in every application. *See* Cal. Code Regs. tit. 13, §§ 2014(a), 2015(a)(3); *id.* §§ 2014(b), 2015(b) (defining "[c]ontrolling party" to include "motor carrier"). The test is not whether some covered fleets could comply with the regulation without it offending the FAAAA, but whether any "set of circumstances exists under which *the Act* would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987) (emphasis added); *see also Puente Ariz. v. Arpaio*, 821 F.3d 1098, 1104 & n.6 (9th Cir. 2016) (noting that distinction between facial and as-applied challenges "in preemption cases is not entirely clear"). Defendants also misunderstand the significance of the distinction between facial and as-applied challenges. That "distinction" "goes to the breadth of the remedy employed by the Court." *Citizens United v. FEC*, 558 U.S. 310, 331 (2010). Thus, the Court could limit relief to motor carriers who engage in the "transportation of property." 49 U.S.C. § 14501(c)(1).

2.      Advanced Clean Fleets significantly affects prices, routes, and services of motor carriers. The statute preempts "'[s]tate enforcement actions *having a connection with, or reference to*,' [motor] carrier 'rates, routes, or services.'" *Rowe v. New Hampshire Motor Transp. Ass'n*, 552 U.S. 364, 370 (2008) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992)). Defendants characterize the Complaint as alleging "indirect" effects on prices, routes, and services. ECF No. 68-1, at 16. But *Rowe* also recognized that the FAAAA preempts regulations that have an "only indirect" effect on prices, routes, and services. 552 U.S. at 370 (quoting *Morales*, 504 U.S. at 386). Only regulations with "tenuous, remote, or peripheral" effects do not implicate the

1    FAAAA. *Rowe*, 552 U.S. at 371 (quoting *Morales*, 504 U.S. at 390). The FAAAA's text

2    "express[es] a broad pre-emptive purpose." *Morales*, 504 U.S. at 383.

3        Defendants' best case is *California Trucking Ass'n v. Bonta*, 996 F.3d 644 (9th Cir. 2021);

4    ECF No. 68-1, at 16. That case considered a "generally applicable labor law" that classified workers

5    "as either employees or independent contractors." 996 F.3d at 649. The Ninth Circuit held that

6    because the law "applies to employers generally" and does "not single out motor carriers but instead

7    affects them solely in their capacity as employers," it was not preempted by the FAAAA. *Id.* at

8    658. The "meal and rest break laws" in *Dilts* likewise applied to all employers, not just trucking

9    companies. *Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 647 (9th Cir. 2014). Another of

10   Defendants' cases reviewed a regulation that applied to "owners and operators of warehouses," not

11   to motor carriers. *CTA v. v. S. Coast Air Quality Mgmt. Dist.*, CV-21-06341, WL 9622548, at *6

12   (C.D. Cal. Dec. 14, 2023). And the likelihood-of-success analysis in *Nichols* applied a Ninth Circuit

13   case that the Supreme Court later reversed in a decision *expanding* the scope of FAAAA

14   preemption. *See Cal. Dump Truck Owners Ass'n v. Nichols*, No. 2:11-CV-00384, 2012 WL 273162,

15   at *6 (E.D. Cal. Jan. 30, 2012) (extensively quoting *ATA v. City of Los Angeles,* 660 F.3d 384, 396–

16   97 (9th Cir.2011), *reversed in part by ATA v. City of Los Angeles*, 569 U.S. 641 (2013)).

17       Advanced Clean Fleets is nothing like the rules in Defendants' cases. The regulation directly

18   regulates *fleets*—i.e., a collection of "vehicles" and "motor carrier[s]." Cal. Code Regs., tit., 13,

19   § 2015(a), (b). It is not a "generally applicable state transportation, safety, welfare, or business

20   rule[] that do[es] not otherwise regulate prices, routes, or services." *Dilts*, 769 F.3d at 644.

21   Naturally, Advanced Clean Fleets—which singles out the trucking industry—has much more than

22   a tenuous or remote connection with motor carrier prices, routes, and services. *See* Compl. ¶¶ 220–

23   42. The regulation is related to *prices* because battery-electric trucks "are significantly more

24   expensive than internal-combustion trucks," and those extra costs will be passed onto consumers.

25   *Id.* ¶ 222; *see* ¶¶ 221–26. It is related to *routes* because "battery electric trucks can travel no more

26   than 500 miles on a single charge." *Id.* ¶ 231. But as compared to standard internal-combustion

27   trucks, which "can travel up to 2,000 miles before refueling," "Advanced Clean Fleets will restrict

28   fleet operators to routes that have sufficient recharging facilities, forcing them to abandon routes

1  that are currently and would remain well-travelled so long as the ability to refuel were not at risk."

2  *Id.* ¶¶ 231, 233. Finally, the regulation is related to *services* because the frequent need to recharge

3  battery-electric trucks will significantly increase the time trucks need to deliver goods as compared

4  to the delivery services they offer now. *Id.* ¶ 235–42.

5  Defendants' responses are unavailing. They claim that motor carrier routes and services will

6  not be affected because "ACF permits a fleet to consist of non-ZEVs past 2030." ECF No. 68-1, at

7  18. True enough, but by 2042, qualifying fleets may not operate *any* internal-combustion truck in

8  California (and much sooner for medium-duty trucks). Compl. ¶ 74. And Defendants' reliance on

9  the Inflation Reduction Act creates yet another fact dispute about whether federal subsidies will

10 offset the massive increase in costs that fleets will face if forced to comply with Advanced Clean

11 Fleets. *See Russell*, 621 F.2d at 1042 (courts "must resolve all factual disputes in favor of the

12 plaintiffs in a motion to dismiss under Fed. R. Civ. P. 12(b)(6)").

13 **V.    The Complaint States a Dormant Commerce Clause Claim.**

14 Plaintiffs plausibly alleged that Advanced Clean Fleets violates the dormant Commerce

15 Clause. That doctrine precludes the enforcement of "certain state regulations on instrumentalities

16 of interstate transportation—trucks, trains, and the like"—that burden interstate commerce. *Nat'l*

17 *Pork Prod. Council v. Ross*, 598 U.S. 356, 380 n.2 (2023). As with their FAAAA argument,

18 Defendants contradict their CAA argument by claiming that the dormant Commerce Clause is

19 inapplicable because of CAA § 209(b)'s preemption waiver provision. Defendants' inconsistent

20 positions aside, Defendants have not received a waiver. So even if § 209(b) could be understood as

21 Congress's authorization of California-specific emissions standards, neither Congress nor the EPA

22 has approved *these emissions standards.* Defendants are attempting to "adopt" and "enforce"

23 Advanced Clean Fleets outside the statutory process approved by Congress. 42 U.S.C. § 7543(a).

24 Plus, even if Defendants ultimately receive a waiver, the regulation still violates the dormant

25 Commerce Clause because Advanced Clean Fleets is far outside "the scope of the congressional

26 authorization" in § 209(b). *W. & S. Life Ins. v. State Bd. of Equal. of Cal.*, 451 U.S. 648, 652–53

27 (1981). Congress has not ratified Advanced Clean Fleets. The complaint alleges—and Defendants

28 do not contest—that § 209(b) was enacted to address "California's unique problems" regarding its

air quality. *Motor & Equip. Mfrs. Ass'n, Inc. v. EPA*, 627 F.2d 1095, 1109 (D.C. Cir. 1979) (quoting S. Rep. No. 403, 90th Cong., 1st Sess. 33 (1967)); *see* Compl. ¶¶ 189–97. Nothing in § 209(b) purports to allow California to regulate *interstate* commerce, which is exactly what Advanced Clean Fleets does. *Id.* ¶¶ 250–65; *see* ECF No. 68-1, at 19 (acknowledging that "*some* out-of-state trucking companies" might "cease California operations" due to the regulation).

The Complaint states a dormant Commerce Clause claim because it alleges facts showing that Advanced Clean Fleets will "impede *the flow* of interstate goods." *Ross*, 598 U.S. at 380 n.2. Plaintiffs allege, for example, that Advanced Clean Fleets will prohibit some of NTA's members from "driving their trucks on routes to and within California if they use too few battery-electric trucks or have not complied with CARB's registration and recordkeeping requirements." Compl. ¶ 228. And it also alleges that by "forcing fleets to use less efficient trucks," fleets will be forced "to abandon routes that are currently and would remain well-travelled" and will cause delays in the delivery of interstate goods because "recharging battery-electric trucks takes much longer than refueling trucks with internal-combustion engines." *Id.* ¶¶ 229, 238. In those ways, Advanced Clean Fleets is exactly like the vehicle-configuration regulations that the Supreme Court struck down in *Bibb v. Navajo Freight Lines, Inc.*, 359 U.S. 520 (1959), and *Southern Pacific Co. v. Arizona ex rel. Sullivan*, 325 U.S. 761 (1945); *see* Compl. ¶¶ 246–59. Like those regulations, Advanced Clean Fleets is "out of line with the requirements of almost all the other States" and thus "place[s] a great burden of delay and inconvenience on those interstate motor carriers entering or crossing [California's] territory." *Bibb*, 359 U.S. at 529–30; *see also Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 299 n.12 (1997) ("[A] small number of our cases have invalidated state laws under the dormant Commerce Clause that appear to have been genuinely nondiscriminatory, in the sense that they did not impose disparate treatment on similarly situated in-state and out-of-state interests, where such laws undermined a compelling need for national uniformity in regulation.").

The Complaint also states a discrimination claim. State regulations "offend the Commerce Clause when they seek to 'build up . . . domestic commerce' through 'burdens upon the industry and business of other States,' regardless of whether Congress has spoken." *Ross*, 598 U.S. at 369 (quoting *Guy v. Baltimore*, 100 U.S. 434, 443 (1880)). Given that Advanced Clean Fleets is so

"burdensome," "motor carriers with only limited activities in California will choose to forgo the California market altogether rather than" continue to operate in California and "comply with the regulations." Compl. ¶ 261. When out-of-state trucking companies can no longer afford to do business in California, California-based trucking companies benefit, as their share of California's logistics market increases. Compl. ¶¶ 263–64.

## VI.   The Attorney General Is Not Immune from Two Plaintiffs' Claims.

Defendants admit that the Eleventh Amendment does not immunize them from State Plaintiffs' claims. ECF No. 68-1, at 19 n.6. Nor does that Amendment preclude a suit by the Arizona Legislature or NTA. An *Ex parte Young*, 209 U.S. 123 (1908), suit "avoids an Eleventh Amendment bar" if "the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.,* 535 U.S. 635, 645 (2002) (internal quotation omitted). Here, all Plaintiffs seek a prospective injunction precluding Defendants from enforcing Advancing Clean Fleets because it violates federal law. Compl. p. 36.

Defendant Attorney General Bonta has authority to enforce Advanced Clean Fleets. *See Assoc. des Eleveurs v. Harris,* 729 F.3d 937, 943–44 (9th Cir. 2013). He can "maintain an action for equitable relief . . . for the protection of the natural resources of [California] from pollution, impairment, or destruction." Cal. Gov. Code § 12607. He is also authorized to institute civil actions to enforce "fuel regulations," Cal. Health & Safety Code § 43031, and has brought such suits before. *E.g.*, *People v. Mobil Oil Corp.*, 143 Cal. App. 3d 261 (Ct. App. 1983). Advanced Clean Fleets' enforcement provisions authorize civil penalties, Cal. Code Regs. tit. 13, § 2015.6 (high-priority); § 2016(g) (2036 sales ban); § 2014.3 (drayage), that the Attorney General can enforce. *See* Cal. Health & Safety Code § 42403(a).

Finally, the Arizona Legislature is a proper plaintiff. *Cf.* ECF No. 68-1, at 19 n.6. State agencies can bring *Ex parte Young* suits because "the validity of an *Ex parte Young* action" does not "turn on the identity of the plaintiff." *Va. Off. for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 256 (2011). If state agencies can bring *Ex parte Young* suits, the Arizona Legislature can too.

## CONCLUSION

Defendants' motion to dismiss should be denied.

1

2    Dated:  September 11, 2024                          Respectfully submitted.

3                                                        MICHAEL T. HILGERS

4                                                        Attorney General of Nebraska

5                                                        /s/ Eric J. Hamilton

6                                                        ERIC J. HAMILTON (CA 296283)

7                                                        *Solicitor General*

     ZACHARY B. POHLMAN*†

8                                                        *Assistant Solicitor General*

     Nebraska Department of Justice

9                                                        2115 State Capitol

10                                                       Lincoln, Nebraska 68509

     Tel.: (402) 471-2683

11                                                       Fax: (402) 471-3297

12                                                       eric.hamilton@nebraska.gov

     zachary.pohlman@nebraska.gov

13

14                                                       *Counsel for Plaintiffs State of Nebraska, State
                                                         of Alabama, Arizona State Legislature, State of*

15                                                       *Georgia, State of Idaho, State of Indiana, State
                                                         of Iowa, State of Kansas, State of Louisiana,*

16                                                       *State of Missouri, State of Montana, State of
                                                         Oklahoma, State of South Carolina, State of*

17                                                       *Utah, State of West Virginia, and State of
                                                         Wyoming*

18

19

20

21

22

23

24

25

26

27

28

STEVE MARSHALL
Attorney General of Alabama

ROBERT M. OVERING*
*Deputy Solicitor General*
Office of the Attorney General
State of Alabama
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama 36130-0152
Tel.: (334) 242-7300
Fax: (334) 353-8400
robert.overing@alabamaag.gov

*Counsel for Plaintiff State of Alabama*

TIM GRIFFIN
Attorney General of Arkansas

/s/ Nicholas J. Bronni (as authorized on
9/10/2024)
NICHOLAS J. BRONNI (CA 243337)
*Solicitor General*
DYLAN L. JACOBS*
*Deputy Solicitor General*
Office of the Arkansas Attorney General
323 Center Street, Suite 200
Little Rock, Arkansas 72201
Tel.: (501) 682-2007
dylan.jacobs@arkansasag.gov

*Counsel for Plaintiff State of Arkansas*

ARIZONA STATE LEGISLATURE

WARREN PETERSEN
President of the Arizona State Senate

BEN TOMA
Speaker of the Arizona House of Representatives

JUSTIN D. SMITH*
James Otis Law Group, LLC
13321 North Outer Forty Road, Suite 300
St. Louis, Missouri 63017
Tel.: (816) 678-2103
justin.smith@james-otis.com

*Counsel for Plaintiff Arizona State Legislature*

CHRISTOPHER M. CARR
Attorney General of Georgia

STEPHEN J. PETRANY*
*Solicitor General*
Office of the Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
Tel.: (404) 458-3408
spetrany@law.ga.gov

*Counsel for Plaintiff State of Georgia*

1   RAÚL R. LABRADOR
    Attorney General of Idaho
2

3   ALAN M. HURST*
    *Solicitor General*
4   Office of the Idaho Attorney General
    P.O. Box 83720
5   Boise, Idaho 83720
    Tel.: (208) 334-2400
6   alan.hurst@ag.idaho.gov
7

8

9   *Counsel for Plaintiff State of Idaho*

10  BRENNA BIRD
    Attorney General of Iowa
11

12  ERIC H. WESSAN*
    *Solicitor General*
13  1305 E. Walnut Street
    Des Moines, Iowa 50319
14  Tel.: (515) 823-9117
    Fax: (515) 281-4209
15  eric.wessan@ag.iowa.gov
16

17  *Counsel for Plaintiff State of Iowa*

THEODORE E. ROKITA
Attorney General of Indiana

JAMES A. BARTA*
*Solicitor General*
Indiana Attorney General's Office
IGCS – 5th Floor
302 W. Washington St.
Indianapolis, Indiana 46204
Tel.: (317) 232-0709
james.barta@atg.in.gov

*Counsel for Plaintiff State of Indiana*

KRIS W. KOBACH
Attorney General of Kansas

ABHISHEK S. KAMBLI*
*Deputy Attorney General*
Office of the Kansas Attorney General
Memorial Building, 2nd Floor
120 SW 10th Avenue
Topeka, Kansas 66612-1597
Tel.: (785) 296-7109
Fax: (785) 291-3767
abhishek.kambli@ag.ks.gov

*Counsel for Plaintiff State of Kansas*

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| ELIZABETH B. MURRILL | ANDREW BAILEY |
| Attorney General of Louisiana | Attorney General of Missouri |
| | |
| KELSEY L. SMITH* | CALEB RUTLEDGE* |
| *Deputy Solicitor General* | *Assistant Attorney General* |
| Louisiana Department of Justice | Attorney General's Office of Missouri |
| 1885 N. Third Street | Post Office Box 899 |
| Baton Rouge, Louisiana 70804 | Jefferson City, Missouri 65102 |
| Tel.: (225) 428-7432 | Tel.: (573) 751-0812 |
| smithkel@ag.louisiana.gov | Fax: (573) 751-0774 |
| | caleb.rutledge@ago.mo.gov |
| | |
| *Counsel for Plaintiff State of Louisiana* | *Counsel for Plaintiff State of Missouri* |
| | |
| AUSTIN KNUDSEN | GENTNER DRUMMOND |
| Attorney General of Montana | Attorney General of Oklahoma |
| | |
| CHRISTIAN B. CORRIGAN* | GARRY M. GASKINS, II* |
| *Solicitor General* | *Solicitor General* |
| PETER M. TORSTENSEN, JR.* | JENNIFER L. LEWIS* |
| *Deputy Solicitor General* | *Deputy Attorney General* |
| Montana Department of Justice | Office of the Attorney General |
| 215 N. Sanders | of Oklahoma |
| Helena, Montana 59601 | 313 NE Twenty-First St. |
| christian.corrigan@mt.gov | Oklahoma City, Oklahoma 73105 |
| peter.torstensen@mt.gov | Tel.: (405) 521-3921 |
| | garry.gaskins@oag.ok.gov |
| *Counsel for Plaintiff State of Montana* | jennifer.lewis@oag.ok.gov |
| | |
| | *Counsel for Plaintiff State of Oklahoma* |

1  ALAN WILSON                                    SEAN REYES
2  Attorney General of South Carolina             Attorney General of Utah

3  JOSEPH D. SPATE*                               STANFORD PURSER*
4  *Assistant Deputy Solicitor General*            *Solicitor General*
   1000 Assembly Street                           Office of the Utah Attorney General
5  Columbia, South Carolina 29201                 160 E. 300 S., 5th Floor
6  Tel.: (803) 734-3371                           Salt Lake City, Utah 84111
   josephspate@scag.gov                           Tel.: (385) 382-4334
7                                                 spurser@agutah.gov
8  *Counsel for Plaintiff State of South Carolina*
                                                  *Counsel for Plaintiff State of Utah*
9
   PATRICK MORRISEY                               BRIDGET HILL
10 Attorney General of West Virginia              Attorney General of Wyoming
11
   MICHAEL R. WILLIAMS*                           RYAN SCHELHAAS*
12 *Principal Deputy Solicitor General*            *Chief Deputy Attorney General*
13 Office of the Attorney General of West Virginia Office of the Wyoming Attorney General
   State Capitol Complex                          109 State Capitol
14 Building 1, Room E-26                          Cheyenne, Wyoming 82002
15 Charleston, West Virginia 25301                Tel.: (307) 777-5786
   Tel.: (304) 558-2021                           ryan.schelhaas@wyo.gov
16 michael.r.williams@wvago.gov
17                                                *Counsel for Plaintiff State of Wyoming*
   *Counsel for Plaintiff State of West Virginia*
18
19
20
21
22
23
24
25
26
27
28

1  /s/ Nathan D. Clark (as authorized
2  on 9/10/2024)
   NATHAN D. CLARK*
3  JESSICA K. ROBINSON*
   Cline Williams Wright Johnson & Oldfather
4  233 South 13 Street
   Suite 1900
5  Lincoln, Nebraska 68508
6  Tel.: (402) 474-6900
   nclark@clinewilliams.com
7  jrobinson@clinewilliams.com

8  LANDON D. BAILEY (CA 240236)
   Bailey PLC
9  1200 Suncast Lane, Suite 7
10 El Dorado Hills, California 95762
   Tel.: (916) 713-2580
11 landon@baileyplc.com

12 *Counsel for Plaintiff Nebraska Trucking Association*

13 * Pro hac vice application granted
14 † Zachary Pohlman represents the State of Nebraska alone

15

16

17

18

19

20

21

22

23

24

25

26

27

28